UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | CV-12-4568-MWF (Ex) | Date: | January 15, 2014 |
| Title: | Michael F. Consedine -v- HRN Services, et al. | | |

| | |
|---|---|
| Present: | The Honorable MICHAEL W. FITZGERALD, U.S. District Judge |

| Deputy Clerk: | Court Reporter: |
|---|---|
| Rita Sanchez | Not Reported |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| None Present | None Present |

**Proceedings (In Chambers):** ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON AFFIRMATIVE DEFENSES [18, 26] AND DENYING MOTION FOR ORDER FOR PRETRIAL AUTHENTICATION OF DOCUMENTS [19]

     This matter is before the Court on Plaintiff Michael F. Consedine, as Statutory Liquidator of Legion Insurance Company ("Legion") and Villanova Insurance Company (the "Liquidator")'s Motion for Partial Summary Judgment on Affirmative Defenses ("Summary Judgment Motion") (Docket Nos. 18, 26), and the Liquidator's Motion for Order for Pretrial Authentication of Documents (the "Motion for Authentication") (Docket No. 19) (collectively the "Motions"). A hearing was held on January 13, 2014.

     The Summary Judgment Motion is stated to be for the thirteenth affirmative defense of release and the seventeenth affirmative defense of setoff, but is actually aimed at resolving the issue of deficient claims handling by the Liquidator or CIGA. The Summary Motion is **GRANTED** as to the affirmative defense of release and the issue of negligent claims handling, but **DENIED** as to the affirmative defense of setoff, as such.

     The Motion for Authentication is **DENIED**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-12-4568-MWF (Ex)                           Date:  January 15, 2014
Title:       Michael F. Consedine -v- HRN Services, et al.

## I.  BACKGROUND

From 2001 to 2003, Defendant HRN Services, Inc. ("HRN") participated in a multi-layered program of workers' compensation insurance.  (Plaintiff's Amended Separate Statement of Undisputed Facts ("SSUF") ¶¶ 10-11 (Docket No. 26-1); Defendant's Statement of Genuine Disputes of Material Fact and Evidentiary Objections ("SGDMF") ¶¶ 6, 8).  HRN negotiated this program with a broker, John DeFazio, who proposed a "rent-a-captive" insurance scheme as an alternative to a traditional premium pay policy.  (SGDMF ¶ 6).  Under the proposals (referred to herein as the "Program" or the "Mutual Program; *see* Declaration of Arthur Flaster ("Flaster Decl.") Ex. 1 (Docket No. 31-1)), Legion would issue a large deductible policy to HRN, containing a $250,000 per occurrence deductible.  (Workers Compensation Proposal at 2, Flaster Decl. Ex. 1).  HRN's obligation to reimburse Legion would be reinsured via a Deductible Reimbursement Policy with Mutual Indemnity (U.S.) Ltd. (herein referred to collectively with related entities as "Mutual"), a Bermuda corporation that could not issue the policy directly to HRN because it was not licensed in the United States.  (SGDMF ¶ 9).  HRN would pay its premiums directly to Mutual, and HRN in fact dealt primarily with Mutual, rather than Legion, during the duration of the Program.  (*Id.* ¶ 11).  Claims were handled through Gallagher Bassett, a third-party administrator ("TPA") chosen by HRN for this purpose.  (*Id.* ¶ 19).

HRN and Mutual entered their relationship via a Shareholder Agreement, dated April 1, 2001.  (Flaster Decl. Ex. 2).  The parties agree that HRN and Legion had a separate contractual relationship because both understood that Legion would issue HRN a workers' compensation policy under the Program.  Nonetheless, the parties dispute whether HRN was ever provided with a written policy.  The Liquidator has submitted two documents it claims are the workers' compensation policies, policy number WC1-1650295 for the period April 1, 2001 to April 1, 2002, and policy number WC1-1964654 for the period April 1, 2002 to April 1, 2003 (collectively the "Legion Policies").  (SSUF ¶ 11; Declaration of Joseph Naugle ("Naugle Decl.") Exs. 1-2 (Docket No. 26-2)).  HRN contends that it never received the Legion Policies, and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No. CV-12-4568-MWF (Ex)          Date: January 15, 2014

Title:      Michael F. Consedine -*v*- HRN Services, et al.

thus is not bound by them. (Defendant's Response to Purported Undisputed Facts ¶¶ 10-11 (Docket No. 30).

      On April 25, 2003, a California court issued an order appointing the California Insurance Guarantee Association ("CIGA") to administer any claims on which Legion held the risk. (SSUF ¶ 22; Naugle Decl. Ex. 14). On July 25, 2003, a Pennsylvania court adjudged Legion insolvent and appointed the Liquidator as Legion's liquidator. (SSUF ¶ 23; Naugle Decl. Ex. 15). CIGA paid out claims under the Legion Policies and the Liquidator demanded payment from HRN. (SGDMF ¶ 25). HRN refused to pay, because neither CIGA nor the Liquidator provided sufficient information to substantiate the sums the Liquidator demanded, and HRN believed CIGA or other TPAs were paying out too much on claims over which HRN no longer had any control. (*Id.* ¶¶ 25-26).

      On or around November 19, 2008, HRN and Mutual signed a Redemption and Termination Agreement (the "Termination Agreement"). (Flaster Decl. Ex. 4). The terms of the Termination Agreement were as follows. Mutual would draw on the collateral that HRN had provided to secure its liability under the Deductible Reimbursement Policy. Mutual would send this sum to Legion as payment of Legion's outstanding deductible reimbursement claims. Mutual and HRN then released each other of all claims. (*See* Declaration of Charlotte E. Thomas (Thomas Decl.) Ex. 7 (Docket No. 26-18)). The parties dispute whether the Termination Agreement also effected a release of Legion's claims against HRN.

      The Liquidator filed its Complaint initiating the present suit on May 24, 2012. (Docket No. 1). The Liquidator filed the present Motions on November 8, 2013. HRN did not file an Opposition to the Summary Judgment Motion, but only filed an Objection, arguing that counsel for the Liquidator had not met its obligations under Local Rule 7-3. (Docket No. 21). After a status conference on November 21, 2013, the Court ordered the parties to meet and confer regarding the substance of the Motions and allowed the Liquidator to resubmit either or both Motions. The Liquidator submitted an Amended Memorandum of Points and Authorities in Support of Summary Judgment on December 6, 2013. (Docket No. 26). HRN submitted its

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV-12-4568-MWF (Ex) | Date:  January 15, 2014 |
| Title:     Michael F. Consedine -*v*- HRN Services, et al. | |

Opposition on December 13, 2013 (Docket No. 29), and the Liquidator submitted its Reply on December 20, 2013 (Docket No. 38).

The parties do not dispute that Pennsylvania law applies to the Liquidator's rights and responsibilities as statutory liquidator, and California insurance law governs the pre-liquidation contracts between the parties, except insofar as the contracts contain valid alternative choice of law provisions.

## II.     MOTION FOR PARTIAL SUMMARY JUDGMENT

Under the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if it can demonstrate that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  In deciding a motion for summary judgment under Rule 56, the Court applies *Anderson*, *Celotex*, and their Ninth Circuit progeny.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Where, as here, "the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  *In re Oracle Corp. Securities Litig.*, 627 F.3d 376, 387 (9th Cir. 2010).  The burden then shifts to the non-moving party, which may not simply rely on allegations in its pleadings but must identify specific facts raising a genuine dispute that will be material at trial.  Fed. R. Civ. P. 56(c).

The Summary Judgment Motion seeks summary judgment on two of HRN's affirmative defenses: the thirteenth affirmative defense of release and the seventeenth affirmative defense of setoff.  The parties dispute the precise scope of HRN's defense of setoff, and the Liquidator also seeks summary judgment on HRN's defense of negligent or deficient claims handling to the extent that it is separate from the setoff defense.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-12-4568-MWF (Ex)                     Date:  January 15, 2014
Title:     Michael F. Consedine -v- HRN Services, et al.

### A. Release

HRN's thirteenth affirmative defense seeks to prove that Legion released its claim against HRN via a release agreement between HRN and Mutual executed in 2008.  HRN admits that Legion did not sign the purported release agreement, but it argues that Legion's claim was nonetheless released because (a) pursuant to the terms of the Mutual Program, no relationship between Legion and HRN could continue once the relationship between Mutual and HRN terminated, so the Termination Agreement severed any contractual obligation to Legion; or (b) Mutual was empowered as Legion's agent to release Legion's claims, and a jury could conclude that the Mutual–HRN agreement in fact releases Legion's claims as well as Mutual's.

### 1. The Unified Nature of the Program

HRN argues that it never sought out a contractual relationship with Legion.  It entered into what it refers to as the "Mutual Program" or the "Program," whereby Mutual was HRN's "true insurer" and Legion was a mere "pass-through" insurer.  (Opp. at 15; Flaster Decl. ¶¶ 6-8).  It was never the intention of the parties, HRN argues, that the Legion insurance policy could exist independent of the Program.

HRN's contractual basis for this argument is a line in the Shareholder Agreement, which HRN claims is the only document it was provided setting forth its obligations under the Program.  (Opp. at 4; Flaster Decl. ¶ 13).  The Shareholder Agreement was executed by representatives for Mutual and HRN and took effect April 1, 2001.  It states, in pertinent part:

> WHEREAS, a subsidiary of MUTUAL, MUTUAL INDEMNITY (U.S.) LTD. (hereinafter referred to as "INDEMNITY") has issued to SHAREHOLDER [HRN] one or more Deductible Reimbursement Insurance Policies and entered into one or more Reinsurance Agreements (hereinafter referred to individually or collectively as the "TREATY") with the insurance company(ies) shown in Appendix I [Mutual Indemnity (U.S.) Ltd. and Legion] (hereinafter referred to individually or collectively as the "INSURANCE COMPANY"), all as set forth in Appendix I,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV-12-4568-MWF (Ex) | Date:  January 15, 2014 |
| Title:     Michael F. Consedine -v- HRN Services, et al. | |

> pursuant to which INDEMNITY as reinsured certain of the liability of INSURANCE COMPANY on policies of insurance (hereinafter referred to individually or collectively as the "POLICY") issued to SHAREHOLDER and its affiliates.
>
> WHEREAS, this AGREEMENT, the POLICY and the TREATY together constitute a single insurance program (hereinafter the "PROGRAM") which is a uniquely negotiated single contract and no part of the PROGRAM would have been entered into without the other parts being in force.

(Shareholder Agreement at 1-2).  HRN effectively argues that because HRN and Mutual agreed that "no part of the Program would have been entered into without the other parts being in force," the insurance policies that Legion issued to HRN contain an implied condition that if the Shareholder Agreement were ever to be terminated, the associated policies would also be terminated.  This argument fails for the simple reason that Legion was not a party to the Shareholder Agreement.

Whether the Legion Policies proffered by the Liquidator bind HRN will be hotly debated at trial.  Even if HRN is not bound by the Legion Policies, however, it does not follow that Legion is bound by the Shareholder Agreement.  It is clear that the parties intended that some contractual relationship exist between HRN and Legion; indeed, Legion's status as a U.S.-licensed insurer was critical to the operation of the Program.  HRN gained the benefit of Legion's involvement throughout the duration of the Program, and it cannot now claim that it had no contractual relationship with Legion beyond the Shareholder Agreement, which was neither executed by Legion nor even indicates Legion's specific rights and responsibilities as HRN's insurer.  HRN has presented no evidence suggesting that HRN and Legion mutually agreed that their contractual relationship would be conditioned on the continued existence of HRN's contractual relationship with Mutual.

Furthermore, even if Legion is bound by the terms of the Shareholder Agreement, it does not follow that a release of Mutual's claims necessarily effects a release of Legion's claims.  The Court is sympathetic to HRN's sincere understanding

---

**CIVIL MINUTES—GENERAL**                                                                                              6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-12-4568-MWF (Ex)          Date:  January 15, 2014
Title:    Michael F. Consedine -*v*- HRN Services, et al.

that the Mutual Program would provide it with a high level of control over the claims administration process.  HRN chose this policy among its various options because Mutual approved the use of Gallagher Bassett as TPA.  (*See* Flaster Decl. ¶ 17).  But Legion's insolvency overrode any intention of the parties that Gallagher Bassett would act as TPA, because the Guarantee Act, Cal. Ins. Code §§ 1063, 1063.2, empowers CIGA to pay any covered claims of insolvent insurers.  It is California law, not private contractual agreements, that defines how claims against insolvent insurers are paid.  This would have been the case even if HRN had been insured directly by Mutual and Mutual had become insolvent; hence, the fact that Legion could not or did not exercise the level of control that the Liquidator and CIGA have exercised since Legion's insolvency is irrelevant.

### 2. Mutual's Status as Agent of Legion

HRN's next argument is that Mutual and Legion are agents of each other, and thus Mutual was empowered to bind Legion to a release of its claim.  (SDMF ¶ 2; Opp. at 17).  This claim may be refuted on two grounds.  ***First***, an agency relationship may end at any time at the will of the principal.  *See* 3 B.E. Witkin, *Summary of California Law, Agency* § 204, at 257 (10th ed. 2005).  Even if Mutual acted as Legion's insurance in the negotiation and duration of the Program—a proposition that has hardly been shown—no reasonable jury could conclude that Mutual continued to act as Legion's agent when the Termination Agreement was signed in 2008.  Legion went into rehabilitation in 2002 and liquidation in 2003.  (Naugle Decl. Exs. 13-15).  The Liquidator was appointed as the statutory rehabilitator and liquidator, and given broad power to conduct Legion's affairs.  *See* 40 Pa. Stat. § 221.23 (enumerating the powers of a liquidator).  The Liquidator exercised these powers in structuring its relationship with HRN and the third-party claims handlers.  There is simply no evidence suggesting that the Liquidator intended to empower Mutual to dispose of any of Legion's rights.

***Second***, even if Mutual was empowered to release Legion's claims, it was plainly the intent of the parties that the Termination Agreement only release Mutual's claims, not Legion's claims.  The text of the Termination Agreement purports only to terminate the relationship between HRN and Mutual and release to Legion the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-12-4568-MWF (Ex)                    Date:  January 15, 2014
Title:      Michael F. Consedine -v- HRN Services, et al.

remaining collateral held by Mutual for payment of HRN's obligations.  (Flaster Decl. Ex. 4).  There is no indication in the agreement that the collateral, which HRN admits was less than Legion's claim, would operate as a satisfaction of Legion's entire claim.

Legion cites to language in the Termination Agreement it claims supports its position:

> 1. Release.  Effective as at October 29, 2008 both the Insurer and the Company [Mutual] shall release and forever discharge each other [and] each others [sic] agents, successors and assigns[] from any and all liabilities and obligations arising under or related to the Agreements [the Mutual–HRN Deductible Reimbursement Policies] . . . .

(Termination Agreement at 1).  It appears overwhelmingly likely that the use of the term "Insurer" is a typographical error, because the three-page document defines and repeatedly uses the term "Insured" as referring to HRN, and does not define Insurer.  Furthermore, the Termination Agreement claims that "the Company and the Insured desire to terminate" the Mutual–HRN Deductible Reimbursement Policies and "[t]he Insured and the Company" each have authority to enter the agreement.  (*Id.* at 1-2).  Even if HRN were correct that "Insurer" was meant to refer to Legion, it does not follow that Legion released HRN's claims.  The cited paragraph indicates that a release was intended between "Insurer" or "Insured" and the "Company," which is clearly defined as Mutual.  If HRN's interpretation is correct, then Legion and Mutual agreed to a mutual release, not Legion and HRN.

Even if the text of the agreement is ambiguous, the communications of the parties relating to the agreement show that Legion's claims were beyond its scope.  A Mutual representative sent an e-mail to various parties, including HRN's counsel Rick Flaster, describes the agreement as part of the "thought process for taking Mutual out of the structure."  (SSUF ¶ 42; Thomas Decl. Ex. 7).  And the parties discussed—but did not ultimately complete—a separate agreement that would have released Legion's claims.  (*See* Settlement and Release Agreement, Declaration of C. Guerry Collins ("Collins Decl.") Ex. 19 (Docket No. 39-1)).  Rick Flaster e-mailed Guerry Collins on November 19, 2008, stating that HRN had reached a settlement with Mutual and that

---

**CIVIL MINUTES—GENERAL**                                                  8

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-12-4568-MWF (Ex)                    Date:  January 15, 2014
Title:      Michael F. Consedine -v- HRN Services, et al.

"it would appear that HRN may have a realistic possibility of settling with Legion." (Letter Dated November 19, 2008, Collins Decl. Ex. 19). The e-mail attached a proposed Settlement and Release Agreement that clearly included Legion.

There is no genuine dispute as to whether the Liquidator or its predecessors released HRN of its obligations to Legion. Accordingly, the Motion is **GRANTED** as to the defense of release.

### B. Setoff

As is quite often the case when Local Rule 7-3 is not strictly followed, the parties' briefs as to the setoff defense discuss incongruent issues. The Summary Judgment Motion seeks to dispose of HRN's seventeenth affirmative defense of setoff, arguing that HRN is not entitled to set off its claim for negligent claims handling against the Liquidator's affirmative claims. (Mot. at 9-12). HRN responds that its setoff defense is unrelated to negligent claims handling, but rather seeks an offset of unearned premiums. (Opp. at 17). Nevertheless, HRN claims that the Liquidator's "allowing rampant, run-away claims-mishandling" relieves HRN from its obligations under the policy, and it will rely on evidence of this mishandling at trial. (*Id.* at 20). The Liquidator points out the seventeenth affirmative defense of setoff is the only properly pled defense that could possibly encompass HRN's claim that the Liquidator's claims mismanagement was a material breach of the policy. (Reply at 6). HRN does not identify in its Opposition any properly pled defense that could encompass negligent claims handling, but it appears that it may fall under the twenty-second defense for the Liquidator's breach of contract.

It is appropriate here to break through form to reach substance. HRN seeks to establish a defense of negligent or deficient claims handling, and the Liquidator seeks summary judgment on that defense and a ruling that evidence of negligent claims handling will not be permitted at trial.

The Liquidator's primary argument in support of summary judgment is that neither the Liquidator nor CIGA had any duty to HRN to handle claims in any particular manner. (Mot. at 9-12). This is because, the Liquidator argues, both the

---

**CIVIL MINUTES—GENERAL**                                                    9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-12-4568-MWF (Ex)                        Date:  January 15, 2014
Title:       Michael F. Consedine -v- HRN Services, et al.

Legion Policies and the Pennsylvania law establishing the Liquidator's powers and responsibilities make clear that Legion, the Liquidator, and CIGA enjoyed unlimited discretion in the claims administration process.  (*Id.* at 3-4, 11).   As discussed below, although there remains a dispute as to Legion's rights under the policy, state law limits the defenses available to HRN against the Liquidator's claims, and thus summary judgment is appropriate as to HRN's defense of deficient claims handling.

### 1. Legion's Rights Under the Contract

HRN does not dispute that the Legion Policies provide that Legion "ha[s] the right at [its] sole discretion, to pay any amounts within the deductible amounts," and HRN "shall reimburse [Legion] for any sums [it] may have paid."  (Naugle Decl. Exs. 1-2).  Rather, HRN argues that it is not bound by the terms of the Legion Policies because it did not receive them.  (SGDMF ¶ 28).  Legion's rights with respect to claims handling, HRN argues, are found in the Program as described in DeFazio's proposals and the Shareholder Agreement.  (Flaster Decl. Exs. 1-2).  HRN claims that under the intended structure of the Program, a third-party claims administrator of HRN's choosing, rather than Legion, was responsible for handling claims, and the Liquidator breached that agreement by discharging HRN's chosen claims administrator.  (Opp. at 20).

HRN has presented no evidence, however, showing that Legion is bound by the Shareholder Agreement or any other document describing the Program.  As discussed above, HRN knew at all times that, under the Program, it would carry a workers' compensation insurance policy with Legion.  HRN knew at all times that it had some contractual relationship with Legion independent from its relationship with Mutual.  HRN now claims that it would not have entered into a contract under which it lacked authority over the claims administration process, but HRN has not shown that Legion entered into any contract granting HRN such authority.

Nevertheless, triable issues of fact remain over Legion's precise rights and responsibilities with respect to claims handling under the Program.  A dispute remains as to whether the Legion Policies were properly delivered to HRN, which claims to never have received them.  The Liquidator has not sought summary judgment on this

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-12-4568-MWF (Ex)				Date:  January 15, 2014
Title:	Michael F. Consedine -v- HRN Services, et al.

issue.  A jury could conclude that the Legion Policies do not bind HRN, and the terms of their contract should be governed rather by extrinsic evidence including the expressed intention of the parties and course of performance as will be established at trial.  Furthermore, even if the Legion Policies are binding, the Liquidator may have breached them by failing to provide HRN with adequate information relating to claims or substantiate its reimbursement requests with details of payouts.  (*See* Opp. at 7-8).

### 2.  The Liquidator's Rights in Liquidation

Despite this issue of fact, however, state law prevents HRN from raising negligent claims handling as a defense to reimbursement of deductibles for claims paid out by CIGA.  HRN does not dispute than any deficient claims handling occurred only after the liquidation.  (Mot. at 9).  The Liquidator argues that the Pennsylvania Insurance Department Act of 1921, 40 Pa. Stat. § 221.1 *et seq.*, limits the responsibilities of the Liquidator and the defenses available to policyholders against the Liquidator.  Specifically, section 221.23a(f)(1), relating to deductible reimbursements, provides:

> If the insurer has not contractually agreed to allow the policyholder to fund its own claims within the deductible amount, to the extent a guaranty association is required by applicable State law to pay any claims for which the insurer would have been entitled to reimbursement from the policyholder under the terms of the deductible agreement and to the extent the claims have not been paid by the policyholder or by a third party, the receiver shall promptly bill the policyholder for such reimbursement, and the policyholder will be obligated to pay such amount to the receiver for the benefit of the guaranty associations who paid such claims. Neither the insolvency of the insurer nor its inability to perform any of its obligations under the deductible agreement shall be a defense to the policyholder's reimbursements obligation under the deductible agreement.

This statute appears to apply here.  A guaranty association—CIGA—has paid, pursuant to California law, claims for which Legion would have been entitled to reimbursement.  Under the statute, then, HRN is "obligated to pay such amount" to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

**Case No.** CV-12-4568-MWF (Ex)          **Date:** January 15, 2014
**Title:**     Michael F. Consedine -v- HRN Services, et al.

Liquidator for the benefit of CIGA, and Legion's "inability to perform any of its obligations under the deductible agreement" is not a defense to HRN's admitted obligation to reimburse deductibles.

      Section 221.23a was passed in a 2004, and there exists no case law interpreting its application to particular policyholders. It is reasonable to read section 221.23a(f)(1) as the reasoned judgment of the Pennsylvania legislature that the claims payments of a guaranty association are governed solely by state law, rather than any agreement of the parties to the contrary. CIGA's claims payment system is not lawless: it is governed by the California Guarantee Act, Cal. Ins. Code § 1063 *et seq.* California courts have interpreted the Act as limiting CIGA's duties to the payment of "covered claims." *See Isaacson v. CIGA*, 44 Cal. 3d 775, 792, 244 Cal. Rptr. 655 (1988) ("CIGA's obligations are imposed by the Guarantee Act, and not by a contractual relationship with the insured (or the Unfair Practices Act) . . . ."). CIGA may be liable to a policyholder if it fails to meet its statutory duty. *See id.* at 792. Section 221.23a(f)(1) can be read as the Pennsylvania legislature's decision to limit the ability of the parties to contract around state law governing guaranty associations.

      HRN cites *Koken v. Pers. Mgmt., Inc.*, No. Civ. A 06-2277, 2011 WL 5855068 (W.D. La. Nov. 21, 2011), *aff'd sub nom. Consedine v. Pers. Mgmt., Inc.*, No. 11-31202, 2013 WL 4780514 (5th Cir. Sept. 9, 2013), as a case in which an insured was permitted to bring a claim for negligent claims handling against a statutory liquidator. This case is inapposite because it does not appear that a guaranty association was at issue in that case. Rather, claims were handled solely by the insolvent insurance company itself and a hired private TPA. *See id.* at *2 (finding that the insolvent company had hired a TPA and breached the contract with the defendant when it unilaterally changed the agreement so that it funded all losses).

      Counsel for HRN argued at the hearing that this Pennsylvania statute does not apply, because California insurance law governs the relationship between HRN and the Liquidator. Because Legion is a domiciliary of Pennsylvania, Pennsylvania law governs its liquidation. *See Skandia Am. Reinsurance Corp. v. Barnes*, 458 F. Supp. 13, 16 (D. Colo. 1978) (holding that where insolvent company was domiciled in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

Case No.  CV-12-4568-MWF (Ex)                          Date:  January 15, 2014
Title:     Michael F. Consedine -*v*- HRN Services, et al.

Colorado, California law was invalid to the extent that it conflicted with Colorado law governing an insurance company's liquidation). Furthermore, there is a substantively identical statute in the California Insurance Code. *See* Cal. Ins. Code § 1033.5(f)(1).

Accordingly, under applicable state law, HRN may not raise any contractual breaches by the Liquidator as defenses against the Liquidator's claims for reimbursement of funds paid out by CIGA in its fulfillment of its statutory duty to pay out covered claims. This does not mean, however, that HRN is incapable of objecting to the Liquidator's claims handling. If HRN is correct that the Liquidator has breached a contractual duty to HRN, its proper course of action would be to file a claim in the Legion liquidation. Under section 221.23a(f)(1), however, this claim may not be set off against HRN's obligation to reimburse the Liquidator for payments to CIGA, and may not be used as a defense against the Liquidator's affirmative claims.

Additionally, if HRN believes that CIGA has improperly paid out claims, it may bring suit against CIGA. CIGA may be held liable to policyholders if it fails to meet its statutory duties. *See Isaacson*, 44 Cal. 3d at 792 ("[I]f CIGA improperly denies coverage or refuses to defend an insured on a 'covered claim' arising under an insolvent insurer's policy, it breaches its statutory duties under the Guarantee Act."). HRN has presented no authority, however, to suggest that CIGA's failure to meet its statutory duties may be raised as an affirmative defense to its obligation to reimburse the Liquidator. Furthermore, HRN has presented no evidence suggesting that CIGA failed to pay covered claims.

HRN's best argument against summary judgment seems to be that its asserted defenses are not based on Legion's or the Liquidator's "inability to perform any of its obligations under the deductible agreement," but rather the Liquidator's and CIGA's failure to provide any substantiation whatsoever for its payment of claims. Indeed, section 221.23a(f)(1) does not prevent HRN from objecting to the amount owed. This, however, is a failure of proof. The Liquidator will be required to prove at trial the amounts that HRN allegedly owes. HRN will be able to present evidence, rebut the Liquidator's evidence, and argue to the jury that the Liquidator has failed to meet its burden to prove the amount of its damages. But HRN will not be able to argue that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| Case No.  CV-12-4568-MWF (Ex) | Date:  January 15, 2014 |
| Title:       Michael F. Consedine -v- HRN Services, et al. | |

either the Liquidator's failure to provide a detailed accounting in the past or CIGA's failure to substantiate its payouts amount to a breach of contract that excuses HRN's obligation to pay.

Accordingly, the Summary Judgment Motion is **GRANTED** insofar as it seeks summary judgment on HRN's defense that either the Liquidator or CIGA breached a duty, including negligent or deficient claims handling or failure to account for payouts, which excuses HRN's obligation to reimburse deductibles paid out by the Liquidator to CIGA.  The burden still remains on the Liquidator to prove that CIGA has paid covered claims.

### 3. Setoff of Unearned Premiums

As to HRN's claim for setoff of unearned premiums, the Liquidator argues by way of Reply that there is no evidence in the record to support this claim.  (Reply at 9). Because this lack of evidence is pointed out for the first time in the Reply (presumably because the Liquidator seemed to be genuinely unaware of the basis of the seventeenth affirmative defense), HRN has not been given an adequate opportunity to respond to the Motion.  Although the only responsibility of the party moving for summary judgment on a claim for which the nonmoving party bears the burden of proof at trial is to point to a lack of evidence in the record, the failure of the parties to fully meet and confer has prevented this issue from being fully briefed.  The consequences must fall on the moving party.

Accordingly, the Motion is **DENIED** as to the seventeenth affirmative defense of setoff as such.

### III.    MOTION FOR PRETRIAL AUTHENTICATION OF DOCUMENTS

The Motion for Authentication seeks an order from the Court to require HRN to admit to the authenticity of various documents, including the critical Legion Policies. The parties addressed the substance of this motion at the status conference on November 21, 2013, at which the Court instructed the parties to confer regarding the authenticity of the disputed documents.  Counsel for HRN told the Court that HRN

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES—GENERAL

| | |
|---|---|
| **Case No.**  CV-12-4568-MWF (Ex) | **Date:**  January 15, 2014 |
| **Title:**     Michael F. Consedine -*v*- HRN Services, et al. | |

could not admit to the authenticity of the documents because the authenticity remained in dispute.  The Court instructed the parties that it would allow additional discovery for the purposes of authentication, and the Court granted the Liquidator's ex parte application to that effect on December 20, 2013.  (Docket No. 41).

The Court considers the subject matter of the Motion for Authentication to be largely mooted by the Order reopening discovery for the purposes of authentication.  Accordingly, the Motion is **DENIED**.

## IV.     CONCLUSION

The Motion for Authentication is **DENIED**.  The Summary Judgment Motion is **GRANTED** as to the defense of release and **DENIED** as to the defense of setoff.  The Summary Judgment Motion is **GRANTED** as to HRN's defense that either the Liquidator or CIGA breached a duty, including negligent or deficient claims handling or failure to account for payouts, which excuses HRN's obligation to reimburse deductibles paid out by the Liquidator to CIGA.

IT IS SO ORDERED.